# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>John Williams, Jr.,<br><br>Debtor. | C/A No. 15-05179-jw<br><br>Chapter 13 |
| Insight Technology, Inc., d/b/a FactorLoads,<br><br>Plaintiff,<br><br>v.<br><br>John Williams, Jr.,<br><br>Defendant. | Adv. Proc. No. 16-80001-jw<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on the Plaintiff's Motion for Summary Judgment ("Motion") to declare the Plaintiff's claim excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A),[1] and Federal Rules of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7056. The Court makes the following findings of fact and conclusions of law:[2]

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[2] To the extent that the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that the conclusions of law constitute findings of fact, they are so adopted.

1

## **FINDINGS OF FACT**

1. On or about December 13, 2004, John Williams, Jr. ("Defendant"), as the sole owner of his company, entered into a factoring contract with Plaintiff, doing business as FactorLoads ("Plaintiff"). Pursuant to the factoring contract, Plaintiff provided discounted advances to Defendant, based on Defendant's trucking contracts with Impact Technology, Inc. ("Impact"), a company owned by Mike Ajide. In exchange for the advances, Defendant provided Plaintiff with the right to the proceeds from Defendant's freight bills to Impact.

2. For several weeks following the signing of the factoring contract, Plaintiff provided advances to Defendant based on freight bills submitted to Plaintiff by Defendant. Advances ceased immediately when Plaintiff determined that the freight bills submitted by Defendant were based on fraudulent trucking contracts.

3. On January 19, 2005, Defendant issued to Plaintiff an Affidavit ("2005 Affidavit") stating that:

> [J]ust prior to Christmas, 2004, I sold the first batch of bills to Factorloads, and we continued to do this until December 30, 2004. The freight bills we presented to Factorloads for payment, and on which payment was made by Factorloads, were false bills. I knew what we were doing was wrong, but I did it anyway. I planned on paying Factorloads back by using the money to operate more trucks and generate more revenue.

4. On July 31, 2006, Defendant was indicted by the Court of General Sessions, Berkeley County, South Carolina for:

> willfully, unlawfully and feloniously obtain[ing] by false pretense or representation, money or property from Insight Technology, to wit: U.S. currency, with the approximate total value in excess of five thousand dollars and no cents ($5,000.00), with the intent to cheat and/or defraud said Insight Technology. This action being in violation of Section 16-13-240, South Carolina Code of Laws (1976), as amended.

5. On August 1, 2006, Defendant, while represented by counsel, pled guilty to violating

2

S.C. Code Ann. § 16-13-240(1) ("Guilty Plea").

6. On March 5, 2007, Plaintiff filed a Summons and Complaint ("Complaint") against Defendant in the Court of Common Pleas for Berkeley County, South Carolina seeking to collect funds provided by Plaintiff to Defendant as a consequence of certain false freight bills in the amount of $121,035.00 ("Claim").

7. Defendant failed to answer or otherwise respond to the Complaint. Therefore, on motion of Plaintiff on July 11, 2007, a default judgment ("Default Judgment") was entered against Defendant in the amount of $121,035.00, plus interest at the statutory rate until satisfied.

8. On September 29, 2015, Defendant filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code.

9. On January 6, 2016, Plaintiff filed the within captioned Adversary Complaint seeking to except its Claim from discharge pursuant to § 523(a)(2)(A).

10. On January 10, 2016, Defendant filed an Answer ("Answer") to Plaintiff's Adversary Complaint seeking a trial on the merits of the issue of dischargeability.

11. On May 19, 2016, at the conclusion of discovery, and pursuant to the scheduling order issued on April 18, 2016, Plaintiff filed a Motion for Summary Judgment ("Motion").

## CONCLUSIONS OF LAW

Plaintiff filed its Motion seeking to except its claim from discharge under 11 U.S.C. § 523(a)(2)(A). As evidence of the Defendant's fraud, and as grounds for summary judgment, Plaintiff asserts that the Guilty Plea, Defendant's 2005 Affidavit, and the Default Judgment are sufficient grounds for this Court to grant its Motion. Defendant asserts that because the Plaintiff's Claim is based on a default judgment, this Court should allow the parties to fully litigate the merits of the Plaintiff's dischargeability claim.

3

**I.    *Summary Judgment Standard***

Under Fed. R. Civ. P. 56, as adopted and applied to this Adversary Proceeding by Fed. R. Bankr. P. 7056, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718–19 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "[T]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Temkin, 945 F.2d at 718–19 (citing Anderson, 477 U.S. at 247–48).

When reviewing the facts and evidence produced by the parties, the Court must "draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).  "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

**II.    *Preclusive Effect of Prior Proceedings***

Plaintiff asserts that its Claim is excepted from discharge under § 523(a)(2)(A), which provides in relevant part:

> (a) A discharge under section . . . 1328(b) . . . of this title does not discharge an individual debtor from any debt –
>   (2) for money property, services, or an extension, renewal or refinancing of credit, to the extent obtained by –

4

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

On August 1, 2006, Defendant pled guilty to violating S.C. Code Ann. § 16-13-240(1). The statute in effect in 2006 states:

> <u>Obtaining signature or property by false pretenses</u>
> A person who by false pretense or representation obtains the signature of a person to a written instrument or obtains from another person any chattel, money, valuable security, or other property, real or personal, with intent to cheat and defraud a person of that property is guilty of a:
>> (1) felony and, upon conviction, must be fined not more than five hundred dollars and imprisoned not more than ten years if the value of the property is five thousand dollars or more;

S.C. Code Ann. § 16-13-240(1) (1976) ("State Statute").

Plaintiff argues that because Defendant pled guilty to and was convicted of violating the State Statute, the doctrines of collateral estoppel and judicial estoppel bar Defendant from relitigating the underlying issue of Defendant's obtaining property by false pretense.

### A.  Collateral Estoppel Precludes Relitigation

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). "[T]he Supreme Court concluded explicitly that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." <u>In re McNallen</u>, 62 F.3d 619, 624 (4th Cir. 1995) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 284 & n.11 (1991)).

In <u>Zurcher v. Bilton</u>, the South Carolina Supreme Court stated "[t]his Court recently

extended the doctrine of collateral estoppel by adopting the rule that 'once a person has been criminally convicted, the person is bound by that adjudication in a subsequent civil proceeding based on the same facts underlying the criminal conviction.'" Zurcher v. Bilton, 379 S.C. 132, 135-36, 666 S.E.2d 224 (2008) (quoting Doe v. Doe, 346 S.C. 145, 148, 551 S.E.2d 257, 258 (2001)).

In this matter, it is clear that Plaintiff's Claim encompasses the same facts underlying the criminal conviction as set forth in the Guilty Plea. Therefore, as a matter of law, the Guilty Plea collaterally estops Defendant from relitigating the issue of Defendant's fraud. As a result, any debts arising from the fraudulent activity detailed in the Defendant's Guilty Plea are excepted from discharge under § 523(a)(2)(A).

### B. Judicial Estoppel Precludes Relitigation

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750 (2001). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position…." Id. at 749 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). In New Hampshire, the Supreme Court listed three factors to assist in determining which cases to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled …," and a third "consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. at 750-51 (citations omitted).

In his Answer to Plaintiff's Adversary Complaint, Defendant denies that he entered into a

6

conspiratorial relationship with Mike Ajide to create fake shipment invoices, that it was Mike Ajide who "absconded with the entire $120,000 + in funds," and that he does not recall confessing to his role in the fraudulent scheme.

    In his 2005 Affidavit that he issued to the Plaintiff, Defendant stated the following:

> Four (4) or five (5) months ago, Mike Ajide approached me with the idea to create false freight bills, sell them to a factoring company and divide the proceeds. We would use his company, Impact Technology, Inc. as payor of the freight charges…
> [J]ust prior to Christmas 2004, I sold the first batch of bills to Factorloads, and we continued to do this until December 30, 2004. The freight bills we presented to Factorloads for payment, and on which payment was made by Factorloads, were false bills. I know what we were doing was wrong, but I did it anyway…
> I received payment on the false freight bills from Factorloads, and I gave fifty percent (50%) or more to Mike Ajide….

(2005 Aff. at ¶¶ 7, 8, 9).

    Defendant's statements in his Answer are clearly inconsistent with his earlier positions as stated in his 2005 Affidavit and as taken in his Guilty Plea.

    Furthermore, the Guilty Plea, as based on the aforesaid indictment, patently demonstrates by Defendant's admission that the Defendant committed criminal fraud by obtaining money from Plaintiff through the submission of fake invoices, a position inconsistent with the Defendant's denial of fraud in this action. If the Defendant were successful in persuading the Court to accept Defendant's position as stated in his Answer, it would create the perception that either the first or the second court was misled.

    Given Defendant's Guilty Plea and the statements made in his 2005 Affidavit, if Plaintiff were forced to relitigate the issue of Defendant's fraud, the additional time and expense of litigation would impose an unfair detriment on the Plaintiff.

    Guided by the Supreme Court's three-factor analysis, this Court holds that Defendant is

judicially estopped from assuming a position contrary to Defendant's earlier position.

### III.     *Default Judgment has no Preclusive Effect on Litigating Plaintiff's Claim*

South Carolina has adopted the general rule that default judgments are not given preclusive effect. In State v. Bacote, South Carolina's Supreme Court stated that "[i]n the context of a default judgment, collateral estoppel or issue preclusion does not apply because an essential element of that doctrine requires that the claim sought to be precluded actually have [sic] been litigated in the earlier litigation." State v. Bacote, 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998). In Voss v. Pujdak, this Court, applying South Carolina law, held that "default judgment against Defendants is not entitled to collateral estoppel effect in this subsequent bankruptcy proceeding with regard to the § 523(a)(2)(A) claim." In re Pujdak, 462 B.R. 560, 572 (Bankr. D.S.C. 2011).

The Plaintiff relies in part on the Default Judgment as the means of specifying the amount to be determined nondischargeable. Since it has no preclusive effect, Defendant is not precluded from litigating the nondischargeable amount.

### **CONCLUSION**

Based upon the forgoing analysis, Plaintiff's Motion for Summary Judgment is granted in part and denied in part. The doctrines of collateral and judicial estoppel preclude the Defendant from relitigating the issue of whether he acted fraudulently. As a result, Plaintiff has met its burden under Fed. R. Civ. Pro. 56 of showing that no dispute of material fact exists as to the fraud committed by the Defendant that resulted in the Plaintiff's Claim.[3]

Plaintiff has not met its burden demonstrating that Defendant is precluded from disputing the amount of Plaintiff's Claim, nor has Plaintiff or Defendant presented sufficient evidence in this Summary Judgment to allow this Court to rule on an amount that is excepted from discharge.

---

[3] While Plaintiff may rely on the presumptive effect of its allowed proof of claim, Defendant has indicated his objection, and therefore a further hearing is necessitated.

8

Therefore, it is hereby ordered that Plaintiff's claim associated with the facts alleged in its Complaint against the Defendant is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), and further proceedings will be conducted to determine the amount that is excepted from discharge.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/08/2016**



/s/ John E. Waites
US Bankruptcy Judge
District of South Carolina

Entered: 07/08/2016

9